IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>   Plaintiff,  )<br>  )<br>v.  )<br>  )<br>TASMON SALTER,  )<br>  )<br>   Defendant.  )  | Case No. 15-30054 |

## OPINION

RICHARD MILLS, United States District Judge:

Defendant Tasmon Salter has filed an Amended Motion for Compassionate Release.

### I.     BACKGROUND

On June 8, 2016, the Court sentenced Tasmon Salter to 92 months' imprisonment and a 4-year term of supervised release, following his guilty plea to Possession with the Intent to Distribute 50 Grams or more of Methamphetamine, in violation of 21 U.S.C. § 841(b)(1)(B). The Defendant has been in custody since September 21, 2015, and has a current projected release date of March 30, 2022.

The Defendant is a 26-year old black man serving his sentence at FCI Sandstone. He does not suffer from any of the health conditions identified by the Centers for Disease Control and Prevention ("CDC") as creating a high risk from

the virus. The motion provides that Defendant seeks early release so that he may obtain full guardianship of his 4-year old daughter and to provide care for his elderly grandmother. The Defendant claims that the circumstances created by the current COVID-19 pandemic warrant the exercise of the Court's discretion in considering his release to an early period of home confinement, to spare him the risk of exposure to the virus and to permit him to care for his family.

According to the Bureau of Prisons ("BOP") website, 126 inmates and two BOP staff members have died of COVID-19. www.bop.gov/coronavirus (last accessed October 14, 2020). There are 1,550 federal inmates and 733 BOP staff who are currently positive for COVID-19. *Id*. Currently, 14,263 inmates and 1,228 staff have recovered. *Id*. There are 125,814 inmates at BOP-managed institutions, along with approximately 36,000 BOP staff. *Id*.

FCI Sandstone has 64 inmates and no staff members who are currently positive for COVID-19. *Id*. There have not been any inmate deaths due to COVID-19. *Id*. The website reports that 118 inmates have recovered. *Id*. No staff members have tested positive for the virus. FCI Sandstone has 968 inmates, meaning almost 19% of the inmate population has been affected. www.bop.gov/locations/institutions/for (last accessed October 14, 2020).

II.     DISCUSSION

Since President Trump signed the First Step Act into law on December 21, 2018, defendants may now bring motions for compassionate release after first exhausting administrative remedies within the BOP. *See* 18 U.S.C. § 3582(c)(1)(A). The law provides the sentencing judge with jurisdiction to consider a defense motion for reduction of sentence based on "extraordinary" or "compelling" reasons whenever "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]." *See* 18 U.S.C. § 3582(c)(1)(A).

The Defendant's supplement to his amended motion represents that he made a request for compassionate release to the Warden of his facility in May 2020 and thereafter received a rejection letter. Accordingly, the Court finds that the Defendant has met the statutory exhaustion requirement.

The Court must also find that a sentence reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The First Step Act does not say what "extraordinary and compelling reasons" warrant a sentence reduction, but the compassionate release statute directs the Court to consider the sentencing factors of 18 U.S.C. § 3553(a) when deciding compassionate release motions. *See* 18 U.S.C. § 3582(c)(1)(A).

Since passage of the First Step Act, the Sentencing Guideline policy statement has not been updated to reflect that defendants (and not only the BOP) may move for compassionate release but courts have turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *See United States v. Weatherspoon*, 2020 WL 3803035, at *3 (S.D. Ind. July 7, 2020) (citations omitted). The applicable guideline instructs that the Court should consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when deciding a motion for compassionate release and the Court should not grant a sentence reduction if the defendant poses a risk of danger to the community, as defined in the Bail Reform Act. *See* U.S.S.G. § 1B1.13. The policy statement provides examples of "extraordinary and compelling reasons" in the application notes. These examples generally fall into four categories based on a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, or (4) compelling family circumstances. U.S.S.G. § 1B1.13 comment. n.1 (A)-(C). The Defendant cannot meet these "extraordinary and compelling reasons" which would warrant release.

The commentary also includes a fifth catch-all provision for "extraordinary and compelling reasons other than, or in combination with, the reasons described in

subdivisions (A) through (C)," as determined by the BOP. The policy statement was last updated in November 2018 before the First Step Act was passed.

On April 3, 2020, the Attorney General made the finding that emergency conditions are materially affecting the functioning of the BOP, thereby allowing the BOP Director to review all inmates for home confinement. The Attorney General's Memorandum explained that "inmates with a suitable confinement plan will generally be appropriate candidates for home confinement rather than continued detention at institutions in which COVID-19 is materially affecting their operations." There have been calls from legal experts for the Attorney General to expand the home confinement program even further. Moreover, multiple United States Senators have recently voiced concern over BOP's attempts to curb the spread of the virus and their non-responsiveness to the call to release medically vulnerable inmates.

Certainly, the COVID-19 pandemic is in and of itself an extraordinary and unprecedented event in our lifetimes. "The spread of the novel coronavirus, more specifically COVID-19, has presented extraordinary and unprecedented challenges for the nation and poses a serious issue for prisons." *United States v. Coles*, 2020 WL 1976296, *6 (C.D. Ill. Apr. 24, 2020). The Defendant notes that BOP's infection rate is significantly higher than that of the general population in the United States and it also surpasses infection rates around the world. However, "the mere

existence of COVID-19 in society and possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). "Perhaps a prisoner could satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *United States v. Melgarejo*, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020); *see also United States v. Johnson*, 2020 WL 2573239, at *4 (C.D. Ill. May 21, 2020).

The number of cases at FCI Sandstone has risen significantly since the Defendant's amended motion was filed, when only one inmate had tested positive. Over 180 inmates are currently positive or have recovered. As with other BOP inmates, it is very difficult if not impossible for the Defendant in a prison setting to follow the CDC's recommendations to protect himself from exposure to COVID-19. While the Court is sympathetic to the Defendant's family considerations and his desire to care for his daughter and grandmother, the Defendant is no different from countless other BOP inmates in that respect.

The Court also recognizes that Defendant has served 61 months of his 92-month sentence, or two-thirds of his term. His projected release date is just over 17 months from now.

Because the Defendant does not suffer from any of the health conditions identified by the CDC as creating a high risk from the virus, however, the Court finds that Defendant has not established extraordinary and compelling reasons that would warrant compassionate release.

Ergo, the Defendant's Amended Motion for Compassionate Release [d/e 39] is DENIED.

The Clerk will terminate the Defendant's pro se Motion for Compassionate Release [d/e 34] and the Supplements [d/e 40, 42] to his Amended Motion.

ENTER: October 15, 2020

    FOR THE COURT:

        /s/ *Richard Mills*
        Richard Mills
        United States District Judge